I concur with Judge Hattie in.the opinion, that the petitioner is entitled to a judgment of discharge.
BaiTmi," J.
The question in this case is, whether' the petitioner, who is, what Is commonly called a bonded exempt, under the 1st, 21 and 3(J paragraphs of the 4fh clause of the Kith section of the act of Congress, passed in February, 1804, eau be ..nade to perform military service in the Home Guards, by force of the ¡rets of our Legislature creating that organisation.' The solution of this .question, depends upon the preliminary inquiries, first, whether the pe-petitioner was,by virtue of the act of Congress,in theservice of, and performing duty for, the Confederate government, at the time when ho was arrested by the defendant for service in the Home Guard ; and, secondly, whether Congress hod power under the Constitution^ to conscribe the petitioner for any other ■ than services of a military kind.
Upon tho first inquiry, I think there oak not he a reasonable doubt. A critical examination of the 2d and 3d-parágraphs of the clause and section of the acts of Congress, to which I have referred, will show that the per- *25 *onal at torsion of the bonded exempt is required in' tbe management of tbe farm, to enable him to furnisb tbe government/ with tbe amount of provisions required of him. It is inadmissible to suppose rbat- tbe government was indifferent as to tbe source from which bis quota of supplies was to be obtained Tbe government expected hinwto produce tbe grain'and meat on bis own farm, and not to purchase them from another person, Tbe exigencies óf tbe country imperatively demanded.that every man should produce what he could, and tbe spirit of tbe act of Congress, in granting exemptions to tbe owners of fifteen able,-bodied bands, and authorizing details in favor of tbe owners of a less number, evinces a clear design to stimulate production to the greatest extent. It is manifest that this policy would be thwarted, if a large -slave owner, after securing bis -exemption, should be allowed to becoma indifferent»whether be raised provisions on bis own farm, or purchased them elsewhere. Tbe requirement of a. personal supervision of bis form, is further shown by the proviso contained m'iho 6th paragraph of the clause and-" section of the act referred to,-which declares <: that all the exemptions granted aodep this act shall only continue whilst .the persons exempted arc actually engaged in tbeir respective pursuits or occupations." This proviso is evi-iently not. confined to tbe particular exemption'spoken of in the samé paragraph, for it uses tbe term £C act " 'instead of paragraph of clause, and the words. iC their respective pursuits or occupations," are clearly inapplicable, if contractors to carry the mail were ¿he only persons meant. These words necessarily embrace all the classes of exempts mentioned in the whole (i act."
A reference to the exemption act of October, 1862, ia favor of slave owners, and tbe general dissatisfactio* *26 which it cawed throughout tbe country, wift prove still more fully that Congress intended, by the act of 1864, te place the bonded* exempts from military duty into the ■service of the Confederate government, as producers.
The act of October, 1862, exempted from military service in the army the owner of twenty slaves,' without regard to the age, sex or condition, “ to secure the proper police of the country.” But, notwithstanding the cause assigned for it, thfc fact of this exemption of slave owners produced, as is well known, a popular clamor against the measure, which w¿as so great, that Congress was compelled ■■to yield to it; which it did, by repealing the actf and passing the act of February, 1864. The latter act omits the odious feature in the former, and while providing for the indispensable necessity of keeping up a surveillance over slaves when owned in large numbers, made it acceptable to the country, bjt demanding a vigorous service from the owners, as producers for the government.
Tbe second inquiry is, whether Congress had power under the Constitution, to conscribe the petitioner lor any other than services .of a military kind. . That.it had, I think, there can hot be a doubt. Congress has conferred’ upon it by the Constitution of the Confederate States, the power to declaro war, and to raise and support armies. Art. 1, sec. .8, par. 11 and 12. These powers.are conferred in unlimited terms ; except that no appropriation .of mpnoy to that use shall he for a longer time than two years. Armies, when raised, must, he supported, and the power to support must be unlimited as the power to raise them. If the government have the money, or the ability to procure it, Congress may - and usually does, appropriate that to the purpose of purchasing the necessary supplies*; but if there he no money in the treasury, .and the *27 government have no means of procuring a sufficient amount'of it, l can not perceive any reason why these persons who would otherwise be in the field as soldiers, may not be compelled to furnish, according to thoir respective abilities, such provisions and munitions of war, as the army may need. -This commutation of services is similar to the escuage, which, in process of time, was allowed in the feudal law., in exchange for the military services which the tenants in chivalry originally owed the lord, of whom they held their lands. 2 Black. Com., *74. But, even supposing that this commutation of services can not he compelled by Congress, there can be no objection to its being allowed to those who may prefer the service of raising provisions, to that of performing military duty in the field or garrison. , . '
Bronx the foregoing considerations, I am clearly of opinion -that the petitioner was rightfully in the service of the Confederate government.. Tliis, as it seemfs to me, must settle the question as to his liability to be'seized and carried off as a member of the. Home Guard.
The supremacy of the war .power of the Confederate, Over that of the State government, cannot ho disputed.
The personal service which the Confederate government has a right to demand, and has demanded of the petitioner, is inconsistent with that which the folate demands of him ; and, such being the case, the latter must give-way to the former. In this respect the bonded exempts differ from*all those classes of exempts, from whom the. Confederate government makes no demand ofiother kinds o? service, as,a condition of exemption from military service. All of the latter kind of exempts, the State may, at its discretion, -pass into its service in the Militia or Homo Guard organization. The Confederate government cannot ex *28 empt from the service of the State, any person wbo is not called into its own service ; but every one, who is doing ■service for it, must, of necessity, be protected from being forced into an inconsistent service for the State.
I concur, therefore, in opinion with Judge Heath, that the petitioner ought to.be discharged ; 'hut. as he, in de-fere rice to some prior adjudications-of two of iris brethren, «n the benfch of the Superior'Court, made an order pro forma to reniand the petitioner, l.thiuk that order should be revorsod, with costs, and an order of dischargé entered-